Freeman, J.,
delivered the opinion of the court.
On the 9th of June, 1866, Miller, as administrator of A. M. C. Taylor, filed his original bill against Virginia Taylor, widow of A. M. C. Taylor, deceased, and Mary Taylor, minor heir of said A. M. C. Taylor, A. J. Tipton, N. G. Taylor et als., creditors of the estate of said A. M. C. Taylor, and creditors generally. The bill alleges that the administrator had prepared an inventory of the personal estate of his intestate; also an account of sales of personal property sold, which had not been presented to the County Court at that time; but that on examination into the affairs of his intestate, it would be elear that the personal estate would not be sufficient, by a large amount, to meet the indebtedness, though he was unable to state, or even approximate, the deficiency.
The bill refers to several debts due creditors of the estate; one, in form of a revived judgment, on which an execution was expected to be issued, and asks an injunction against said judgment, together with a general injunction against all creditors of the estate, restraining them from bringing suits or attempting to enforce the collection of their claims until further order of the court; and on final hearing the court was asked to declare the rights of all the parties to the suit, and order the sale of so much of the real estate as would raise a fund sufficient to meet all the just indebtedness of the estate, and make such other decrees as the circumstances of the case or the interest of the estate might demand.
*473 This bill states that the administrator finds several notes on N. G. Taylor, a brother of the deceased, among the papers of the deceased, specifying one of them, and says that he is informed and believes said N. G. Taylor will insist that, his intestate is largely indebted to him on settlement,' and in support of his claims “will go far back into the records of the past, and produce old and musty notes and accounts, running back almost, if not quite, to the days of their 1 oyhood, and of date long antecedent to the date of the notes referred to.”
The bill then goes on to suggest an argument against the validity of such claims, based on the recognized shrewdness and business qualities of said N. G. Taylor, and the improbability of his giving his note when the par,ty to whom it was given was largely in his own debt. It then goes on to state, that the complications of the business of the administration, as indicated by the above, and other allegations contained in the bill, between the intestate’s estate and the said N. G. Taylor, specially demanded the assistance of a court of equity, in order to a full and fair settlement of the matters of account between them, and then specially asks that the court will institute such proceeding and special inquiries as will compel the said N. G. Taylor to make full answer as to all the transactions between the parties since the death of their father, requiring him to establish his statements by strict proof in each and every particular. Complainant requires him to make a full and fair statement and exhibit of all the *474 many transactions between them, showing the balance due at each settlement, etc.
This bill was taken for confessed, and, by consent of all parties and on motion of complainant’s counsel, a decree was made for a general account of the assets and liabilities of the intestate’s estate; and it was further ordered that the Master shall “make a special report as to the state of the accounts between the estate and the said N. G. Taylor, reference being had to the discovery sought in the bill of complainant.” This decree was made at the December Special Term, I860.
It seems, however, that answers were afterwards filed by the parties, except N. G. Taylor, before the clerk made his report in pursuance of the above order. At the time of the above decree it was ordered that the Master advertise in the Jonesboro ugh Union Flag, a newspaper published in the town of Jones-borough, Tenn., requiring all creditors of the estate to file their claims with the Master on or before the first day of March, 1867.
At the September Term, 1866, before this, leave liad been granted to complainant to file an amended bill.
On the 20th of March, 1867, an amended and supplemental bill was filed, which, among other things, states that the administrator had found from the reports of the Master, in pursuance of previous order of the court, that the estate, both real and personal, would not be sufficient to pay the debts, and then says complainant is forced to suggest the insol *475 vency of the estate, and asks that it may be administered as an insolvent estate in the Court of Chancery.
The bill states that the creditors of the estate were already before the court by the original bill, and most of them had filed their claims, and that they were so numerous that it would occasion great inconvenience and expense to have process issued for them on the amended bill, concluding by asking that publication be made, notifying all creditors of the estate, and defendants to the original bill and this amended bill, of the filing of the same.'
We need not stop here to point out the irregularities in these proceedings, as all the parties seem to have waived them, and have come in under them to prove their claims without objection.
N. G. Taylor filed his answer, which purports to be an answer to the original bill only, on the 30th of April, 1868, in which he gives a history of the transaction between himself and deceased brother with great particularity, referring to settlements, with their dates, reasons for making them, and circumstances attending them; explains the giving the note for $500 as for borrowed money, when A. M. C. Taylor was indebted to him, satisfactorily perhaps, and says that on the 24th of September, 1859, he succeeded in getting a settlement with his brother of all matters unadjusted between them, and that the $500 note was reported lost, but was included in that settlement and, he thinks, a receipt taken against it.
On taking the account, filed March, 1870, in pur- *476 snance of previous decree, N. G. Taylor presented a large number of claims dated previous to the time of the alleged settlemeut as given' in his own answer, to wit, September 24th, 1859; and it being urged against these claims that N. G. Taylor could not go behind the date of settlement as found in that answer in order to meet this, upon affidavit made, he was allowed to file an amended answer, in which he claims that the statement in his former answer, that the settlement of 1859 embraced all prior claims, was a mistake, and goes on to explain how the mistake occurred. We may remark here, that under the circumstances of the case, and the particularity and the tone of the chai’ges in the bill, and the like particularity of the answer, as well as the detail of the circumstances, with such minuteness, said answer drawn by the respondent, himself a lawyer, that the propriety of allowing this amended answer, to say the least of it, was very doubtful. However, that question is not before us in the aspect of the case as presented by counsel, and we do not decide on the question.
On this state of the case it was heard at March Term on one point, and a decree rendered, which settled the question as to a large amount of the claims of N. G. Taylor presented in the amended answer, from which he has appealed to this court.
It seems that, in order to raise the questton, as we infer, by consent or agreement of counsel, a motion was made to take the amended answer off the file, upon the ground that all the claims sought to be set up in the same were barred by the statute *477 of limitations barring suits against intestate estates before said answer was filed.
The court, on this motion, held that the cause was then properly before the court as an insolvent bill, and that N. G. Taylor, having entered his appearance and asked for time to answer, at September Term, 1866, could not now avail himself of the informalities in not suggesting the insolvency in the County Court, or so stating in the bill; and thereupon proceeded to hold that, as the- proof showed that letters of administration were granted on the 7th of November, 1865, and N. G. Taylor a resident of the State, all claims held by him were subject to be barred by statute of two' years, and all claims not put in suit within two years and six months from 1st of January, 1867, when statute of limitation commenced to run, either in courts of law or presented and set up in answer in this case, as provided by law, were barred; and thereupon the motion to take the answer off the file was allowed so far is it set up claims not asserted in original answer. This presents the main question’ in this case for our decision.
We may remark here, before discussing the single question presented by this decree, that the original bill is one substantially, on the part of the administrator, to administer his trust under the direction of the Court of Chancery — a jurisdiction that has been well settled in England since the reign of Charles II., and is known as a bill of conformity, probably, as Mr. Story suggests, because the executor or administration in such case undertakes to conform to the decree, or the cred *478 itors are compelled by the decree to conform thereto. He says they are not to be encouraged, however, because of the danger of executors and administrators keeping creditors out of their money longer than otherwise would be the case. Such a bill, however, might well have been filed in a Court of Chancery by the administrator against all the creditors under a long train of decisions, extending from the time of Lord Somers, in 1697, down to the present time. See Sto'ry Eq. Jurisp., vol. 1, ss. 542, 543, 544, and case of Thompson v. Brown, 4 Johns’ Ch. R., 619. In this last case Chancellor Kent gives an exhaustive review of the authorities on the subject, and lays down from the authorities and decisions the correct practice on such bills. Such bills may be filed under these decisions either by the administrator or executor, or by a creditor; but the practice seems to have been the same in both cases. It will be seen from the authorities above referred to, however, that under such bills an injunction could not be granted against creditors bringing suits at law on their claims till after an order for an account of assets and liabilities of the estate, and was not grantable, as done in this case, on preliminary application to the Chancellor.
Under the bill, in this aspect of it, from the time of the decree ordering an account, this decree is for the benefit of all the creditors, and they may all come in under it and prove their claims, and all will be enjoined from bringing suits elsewhere in such claims. See 4 J. C. R., 653,
We need not further allude at present to the orig- *479 iual bill, or discuss its precise bearing on the rights of the parties in this litigation.
We proceed to the question directly presented in the decree. Were all claims not sued on in a court of law, or presented by answer, in this case, or filed for allowance with the Clerk and Master, barred within two years and six months from 1st January, 1867, by the statute of limitations?
The question of the bar of the statute of limitations, in case of claims against insolvent estates, was before us in two cases at the last term at Jackson. In one, the case of P. M. Rodgers v. Rodgers et als., it was held, after thorough consideration of the question in an opinion by Judge Deaderick, that “ the statute of limitations apply alike to the administration of solvent and insolvent estates.” In that case letters of administration had 'been granted July, 1866; suggestion of the insolvency of the estate had been made to the County Court at September Term, 1866, and notice given, under s. 2330 of Code, requiring all creditors to file their claims with the clerk before the 22d of January, 1867. On the 29th of June, 1868, the administrator filed his bill in the Chancery Court, transferring the administration to that court, enjoining all further proceedings of the County Court. An account was ordered in the Chancery Court, and on taking the account, George R. Brasfield, administrator, etc., on the 21st of May, 1869, filed a transcript of a judgment obtained against complainants’ intestate in 1861, but was disallowed by the Master, which was sustained by the Chancellor, and this court held that he *480 Avas correct in so doing. It does not appear in the opinion in that case Avhether Brasfield was made a party to the bill.
The same principle was held in the case of Martin, adm’r, v. James Blakemore, adm’r, 5 Heis., 50. In this case thei creditors filed the bill transferring the administration to the Chancery Court.
Is there anything in this case that distinguishes it from the above cases?
We are compelled to assume that the insolvency of the ' estate was suggested on the filing of the amended and supplemental bill, Avhich, though called and treated as an amended and supplemental bill, was more properly an original insolvent bill, and ought to have been filed as such in strictness.
The administration was granted 7th November, 1865; the statute of limitation commenced to run on the 1st of January, 1867, in favor of the administrator; so that, unless there is something in the former proceedings that took the case out of the principle of the above eases, the claim was barred, other things being out of the Avay.
We held in the two cases referred to, that the 'filing of the claim against the estate was the time at which the statute of limitation must be applied, and if barred then, it must be rejected.
Now, admitting that in the original litigation on the original bill in this case, the claims of N. G. Taylor against the estate of A. M. C. Taylor were involved, and that N. G. Taylor was so far an actor in said suit that the claims then involved were saved *481 from the bar, as being filed in - time,' or suit commenced on them in time (and we think this the correct view of that proceeding), still we must look to the state of the pleadings iii that suit to see what claims were being prosecuted by him, and there we find no claims that are presented in his last answer. Qn the contrary they are, by the very terms of that answer, excluded, and shut out from being presented, so that he was compelled to make the affidavit in the record, and get leave to file his amended answer on the 24th of September, 1870, in order to have them oefore the court, and at issue as claims against the estate.
We hold that on well-settled principles, repeatedly argued before this court, the claims presented in this answer can only be considered in reference to the statute of limitations, as filed at the date of filing said answer.
In the case of Crofford v. Cothran & Neil, 2 Sneed, 495, in reference to the effect of an amendment, where, if allowed to relate back to the time of bringing the original suit, it would save the bar of the statute, this court say: “It may be conceded that in general, and for most purposes, the amendment in a case like the present will relate back to the day on which the original process is sued out; but this fiction of relation can not be allowed to obtain where it would work injustice to the opposite party, by taking from him the benefit of an existing legal defense to the action. In a ease, therefore, where the time of the commencement of the action may become important *482 in reference to the statute of limitations, or other matters of defense, the effect of an amendment a,hanging the form of the action, must be restricted to the time when, from the record, it appears to have been granted. From that time only can the plaintiff be regarded as rightly in court.” We think this principle sound, and if so, it must apply with much more force where the amendment, as in this case, for the first time, presents a new and distinct cause of action or claim, and that new claim is barred at the time of the amendment by the statute. The simple principle is, that a party can not be permitted by an amendment to save the bar of the statute as against his claim or cause of action, as presented in the amended claim, and that the time of the amendment, as to the statute of limitation, is to be -considered as commencement of the suit in the form in which it is then presented by the amended pleading. We think the principle equally applicable to proceedings in courts of chancery as at law.
We need not in this opinion reply to the able and ingenious argument of counsel in favor of the claim of Taylor, as we consider the two manuscript cases referred to as conclusive of the question, that the filing of the claim, whether with the clerk or by answer, is the presentation for the first time, in a case like the present, of the claim of the creditor for adjudication; and that when it is so presented, that all legal defenses may be presented against it— one of which is the statute of limitations — and the bar of two years and six months having been com- *483 píete in this case before the presentation of the claim in the amended answer of 24th March, 1870, we hold it might well be interposed as a defense to the claims then presented.
This is a conclusion of this question.
As to the effect of the statute of limitations of six years on other claims presented, we do not think the question is presented in such form in this record as that we can properly decide it.
The decree of the Chancellor will be affirmed as to the question appealed from, and case remanded to the Chancery Court to be further proceeded in. Defendant N. G. Taylor will pay the costs of this court, and of the court below as to the amended answer presenting these claims.